**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

EBONY HICKS,

          Plaintiff,

          v.                              CAUSE NO.: 2:21-CV-165-TLS

LAKE COUNTY SHERIFF
DEPARTMENT,

          Defendant.

**OPINION AND ORDER**

Plaintiff Ebony Hicks filed an Amended Complaint [ECF No. 22] against Defendant
Lake County Sheriff Department, bringing claims under the Americans with Disabilities Act
(ADA), 42 U.S.C. § 12101 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e et seq. Under the ADA, the Plaintiff alleges disability discrimination and harassment
(Count I), failure to accommodate (Count II), and retaliation (Count IV). Under Title VII, she
brings claims of race and sex discrimination (Count III). This matter is now before the Court on
the Defendant's Motion for Summary Judgment [ECF No. 38], which is fully briefed and ripe for
ruling. As set forth below, the Court GRANTS the Defendant's motion on all claims.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an
absence of evidence supporting an essential element of the non-moving party's claim; or
(2) presenting affirmative evidence that negates an essential element of the non-moving party's
claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016)

(citation omitted). In response, the non-movant "must make a sufficient showing on every element of [her] case on which [she] bears the burden of proof; if [she] fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

## MATERIAL FACTS

Plaintiff Ebony Hicks, an African American female, was hired by Defendant Lake County Sheriff's Department in 2018. Def. App'x Hicks, 9:3, 17:15–19, ECF No. 40-13. At all relevant times, she was a correctional officer assigned to the Lake County Jail. *Id.* 17:16–18:1.

On January 3, 2020, the Plaintiff submitted a request for intermittent medical leave pursuant to the Family Medical Leave Act (FMLA) for the serious health condition of type II diabetes; the request was supported by a certification from a medical provider. Def. Ex. A, ECF No. 40-1. On January 29, 2020, the request was approved by then-Human Resources Director for Lake County Government, Danielle Royster, and the Plaintiff was notified by letter. Def. Ex. B, ECF No 40-2. The medical provider indicated on the FMLA paperwork that the Plaintiff would need to miss work periodically for two to four days while experiencing a flare up depending on what exacerbated her condition. Def. Ex. A, pp. 6, 7. The provider indicated that the Plaintiff "suffers with fluctuating glucose, fatigue, dizziness." *Id.* at 7. The leave request did not mention

a mental health condition. *See id.* The Plaintiff explains that stressful situations cause her blood sugar levels to severely decrease or increase. Pl. Ex. 4, No. 13, ECF No. 45-4. She experiences anxiety, worry, and mental and physical pain because of the fatigue, dizziness, and fluctuation of her blood sugar, and she needed short breaks to steady her symptoms and recuperate before returning to work from fatigue or dizziness. *Id.* The leave request was honored by the Defendant, and the Plaintiff had no issues taking intermittent leave as needed. Def. App'x Hicks 58:12–59:8.

As a result of the Lake County Jail's staffing needs, it was common for correctional officers, such as the Plaintiff, to be "mandated" for overtime, meaning that the correctional officers are ordered or directed to remain at the jail and continue working after a scheduled shift. Def. App'x Zenk, 45:7–46:20, ECF No. 40-14. In March and April 2020, the Plaintiff submitted documentation from health care providers, which the Defendant accepts for purposes of the instant motion as constituting a Request for Reasonable Accommodation, specifying that, due to her fluctuating diabetes mellitus and hypertension, the Plaintiff could not work mandated overtime. Def. Ex. A, pp. 10, 11; *see* Def. App'x Hicks 23:17–25:13; Def. App'x Cox 39:11–40:7, ECF No. 40-15. The Request for Reasonable Accommodation did not specify the Plaintiff's inability to work in certain areas of the Lake County Jail, such as Booking, or to work with certain jail populations. *See* Def. Exs. A, B; Def. App'x Hicks 25:14–18. Due to her medical conditions, the Plaintiff was high-risk for contracting COVID-19. Pl. Ex. 4, No. 13; Pl. Ex. 1, 26:3–7, ECF No. 45-1.

On March 23, 2020, the Lake County Sheriff's Department Deputy Warden of Personnel for the Lake County Jail, Kimberly Cox, confirmed she had received the Plaintiff's paperwork and asked the Plaintiff to come see her. Pl. Ex. 5, ECF No. 45-5; Pl. Ex. 3, 39:8–10, 39:24–40:2, ECF No. 45-3. Deputy Warden Cox is an African American female. Def. App'x Hicks, 48:2–3.

On March 24, 2020, the Plaintiff went to Deputy Warden Cox's office to discuss the documentation and additional information regarding her disabilities. Pl. Ex. 1, 39:21–40:3, 40:13–17, 44:12–14; Pl. Ex. 5. When the Plaintiff arrived at Cox's office, Cox's sister JaVonta Kelly was present. Pl. Ex. 1, 41:2–9; Pl. Ex. 4, No. 18. Kelly worked at the Jail as a file clerk and sometimes performed tasks for Deputy Warden Cox; it is unclear whether Kelly had access to personnel or medical records. Pl. Ex. 3, 22:24–23:19, 24:21–22; Pl. Ex. 2, 19:17–20:11, ECF No. 45-2. Deputy Warden Cox then discussed the Plaintiff's sensitive medical information in front of Kelly despite the Plaintiff's disapproval. Pl. Ex. 1, 44:4–11; Pl. Ex. 4, No. 18. The Plaintiff testified that Deputy Warden Cox "basically made comments that they were short-staffed, and if I could not do my job because of my disability, I would be terminated." Pl. Ex. 1, 44:16–18. Deputy Warden Cox told the Plaintiff that her husband had diabetes, that he beat his diabetes, that if he could beat it so could the Plaintiff, and that the Plaintiff needed to lose weight and eat better. *Id.* 44:18–21, 47:23–48:1; *see also* Pl. Ex. 4, No. 18. Cox and Kelly made comments that the Plaintiff was too short for her weight. Pl. Ex. 1, 45:18–23. The Plaintiff testified that this incident was embarrassing and degrading. *See* Def. App'x Hicks, 45:15–23. The Plaintiff was not disciplined immediately following this conversation and her accommodations were honored. *Id.* at 44:22–45:6. In the days following this meeting, the Plaintiff went to Human Resources to file a grievance about Deputy Warden Cox's improper disclosure of her medical information to Kelly. Pl. Ex. 1, 48:6–16. The Plaintiff perceived Deputy Warden Cox's conduct as harassment, which she states exacerbated her symptoms and caused her to be prescribed anxiety medication. Pl. Ex. 4, No. 13.

The Plaintiff testified that at some point after the conversation with Deputy Warden Cox, she was assigned to work on the third floor (the men's floor) six times, despite male employees

available to work that floor and despite the Plaintiff having never previously worked that floor; she states that a female officer being assigned to work on the third floor was usually being punished by the assignment. Pl. Ex. 4, No. 22; *see* Pl. Ex. 1, 35:1–22.

On April 17, 2020, the Plaintiff was disciplined when, on April 11, 2020, she had allegedly refused to take another officer's temperature per COVID-19 protocols. Def. Ex. E, pp. 1–5, ECF No. 40-5. The Plaintiff maintains that the coworker's temperature was taken without incident. Pl. Ex. 1, 52:6–15; Pl. Ex. 4, No. 26. Deputy Warden Cox wrote up the Plaintiff for discipline based on the Defendant's protocol, but the final approval of the discipline rested with Lake County Jail Warden Michael Zenk. Pl. Ex. 3, 46:5–48:4. The Plaintiff subsequently discussed the disciplinary write-up with Deputy Warden Cox, who advised that the Plaintiff could arrange to meet with Warden Zenk if she wished to dispute the write-up. Def. Ex. E, p. 7; Def. App'x Hicks, 54:16–20. Deputy Warden Cox did not explain when or how to arrange the meeting. Def. App'x Hicks, 55:20–23.

The Plaintiff, incorrectly understanding Deputy Warden Cox to mean that she could meet with Warden Zenk at that time, proceeded directly to Warden Zenk's office; as a result, the Plaintiff was found to be in violation of the Lake County Jail chain of command. *Id.* at 54:21–56:12; Def. Ex. E, p. 7; Pl. Ex. 3, 58:8–59:1; Def. Ex. L, p. 5, ECF No. 40-12. As a result, the Plaintiff received a second disciplinary write-up and associated suspension from Warden Zenk. Def. Ex. E, p. 7. The Plaintiff discussed the write-up and suspension with Warden Zenk but ultimately served her suspension. Def. App'x Hicks, 57:10–15. Warden Zenk received complaints from the Plaintiff that she felt she had been harassed and mistreated by Deputy Warden Cox. Def. App'x Zenk, 40:12–15. Warden Zenk referred the complaint to the Lake County Sheriff's Chief Deputy for investigation, but the investigation did not substantiate the

Plaintiff's allegations. *Id.* 40:16–41:16. The Plaintiff does not recall any further disciplinary action being taken against her from May through October 2020. Def. App'x Hicks, 57:1–25.

The Lake County Jail had been short staffed since the Plaintiff was hired in 2018, including between March and December 2020 during the COVID-19 pandemic. Def. App'x Hicks, 36:21–37:12; Def. App'x Zenk, 42:4–45:6.

On May 26, 2020, Plaintiff was assigned to Booking. Pl. Ex. 4, No. 14. She explained to her supervisor, Lieutenant Kimmel, her health concerns about working in Booking where she would have consistent close contact with inmates and be required to take their temperatures, regardless of whether they wore masks. *Id.* The Plaintiff requested a work area that would place her at less risk of contracting COVID-19, given her disabilities. Def. App'x Hicks, 25:14–27:1. Lieutenant Kimmel approved her request not to be assigned to Booking, and the Plaintiff worked her normal assignment on the fifth floor with the female inmates. Pl. Ex. 4, No. 21; Pl. Ex. 1, 28:4–9; 30:2–8, 31:4–11. The next day the Plaintiff was assigned to Booking and was told she could not get an accommodation; however, she asked for and was provided personal protective equipment. Pl. Ex. 1, 28:9–29:22, 31:11–32:5. She started having an anxiety attack and went home early. *Id.* 31:24–32:8. On August 6, 2020, the Plaintiff was again assigned to Booking. Pl. Ex. 4, No. 21; Pl. Ex. 1, 31:19–25. She explained her approved accommodation to Sergeant Machnikowski, who stated he was not allowed to accommodate her anymore and she would have to work in Booking. Pl. Ex. 4, No. 21. The Plaintiff had panic attacks throughout her shift. *Id.* Deputy Warden Cox testified that she remembered an accommodation to not place the Plaintiff in high-risk areas because her diabetes made her high risk for COVID-19. Pl. Ex. 3, 41:8–16.

Regarding the Request for Reasonable Accommodation in March 2020 to not work mandated overtime, Sergeant Zelnis emailed Deputy Warden Cox on October 18, 2020, asking

for clarification about the accommodation. Def. Ex. C, ECF No. 40-3. Explaining that on October 17, 2020, the Plaintiff worked her regular 7:00 a.m. to 3:00 p.m. shift and then voluntarily worked another officer's shift from 3:00 p.m. to 11:00 p.m. that evening, Sergeant Zelnis asked whether the Plaintiff is permitted to work a 16-hour shift. *Id.* Cox forwarded the question to Human Resources Director Danielle Royster who responded, "She cannot work 16 hours shifts according to her notice. She can work overtime but not 2 shifts back to back." *Id.* The Plaintiff testified that she was able to work overtime if she "wasn't stressed" or did not "have anxiety." Def. App'x Hicks, 60:4–18. However, she testified that she did not pick up a shift very often; in fact, the October 18, 2020 double shift may have been an isolated incident. *Id.* 60:19–25. When asked about the overtime she worked, the Plaintiff testified, "I know that some were forced and some weren't. I can't be exact to which ones were forced and which ones weren't." *Id.* 65:19–21. However, she also testified that, once she turned in her doctors' notes in March and April 2020, the number of times she was forced to work a double was reduced, if not eliminated. *Id.* 45:1–6, 65:22–66:3.

On September 30, 2020, the Plaintiff filed an EEOC charge of discrimination. *See* Am. Compl. ¶ 3, ECF No. 22. Warden Zenk was aware of the Plaintiff's EEOC charge at the time it was filed and referred it to the Sheriff for an investigation. Pl. Ex. 2, 40:1–11, 16–21.

On November 21, 2020, the Plaintiff's Performance Evaluation Report included ratings of "meets standards" for all areas of assessment by her supervisor, Lieutenant Kimmel. Pl. Ex. 8, ECF No. 45-8.

In the months leading up to November 2020, the Plaintiff had "ongoing work-related stress" that exacerbated her disability, and she had also learned in August 2020, that her mother's murderer was being released from prison, which caused the Plaintiff to have an ongoing mental

health crisis, exacerbating her anxiety, diabetes, and hypertension. Pl. Ex. 4, No. 24. The

Plaintiff states that her medical provider suggested she take some time off work because of her

elevated stress levels. *Id.* Based on this suggestion, the Plaintiff planned and took a vacation with

her friends from November 13 to 16, 2020, to de-stress and reduce her symptoms; she used her

FMLA leave, which she had done before, based on an understanding that the FMLA leave was

for her mental health issues. *Id.*; Pl. Ex. 1, 72:2–73:3; Pl. Ex. 2, 33:25–34:4, 36:17–22. This

decision was based on her understanding of the FMLA and not on any representation made to her

by the Defendant; the Plaintiff had been advised by her supervisor that she had no regular

vacation leave to take, which prompted the Plaintiff to use FMLA leave for the vacation. Def.

Ex. G, ECF No. 40-7; Def. App'x Hicks, 70:22–72:11.

In late November or early December 2020, Warden Zenk became aware that the Plaintiff

had utilized FMLA leave to take a personal vacation. Def. App'x Zenk, 33:18–35:18; Def. Ex. F,

p. 1, ECF No. 40-6. He forwarded the matter of the Plaintiff's alleged improper use of FMLA

leave to the Defendant's Internal Affairs Division. Def. App'x Zenk, 35:20–37:10. During the

investigation, the Plaintiff gave a statement that she used FMLA leave to take a personal

vacation. Def. Ex. F, p. 7; Def. App'x Hicks, 69:21–71:5.

Prior to determining any potential disciplinary actions to be taken against the Plaintiff,

Warden Zenk researched the issue himself, finding that many other employers had terminated

employees under similar circumstances. Def. App'x Zenk, 47:17–48:21. He also consulted with

Human Resources Director Royster, who felt this was a serious matter that warranted

termination. *Id.* 48:21–49:18. Royster is an African American female. Def. App'x Hicks, 48:9–

14. Although Deputy Warden Cox compiled information for Warden Zenk's review in this

process, she did not make a formal recommendation regarding the Plaintiff's discipline. Def. App'x Zenk, 49:10–15; Def. App'x Cox, 11:5–12, 12:4–8, 13:10–14, 14:14–22.

Warden Zenk thought the violation needed to be investigated officially because if the Plaintiff had misused FMLA leave as vacation time, it was a violation of the handbook and the FMLA rules and was grounds for termination. Def. Suppl. Ex. 36:11–37:7, ECF No. 51-1. He ultimately recommended to the Lake County Sheriff, Oscar Martinez, that the Plaintiff be referred for termination of her employment. Def. Ex. K, No. 3, ECF No. 40-11. Sheriff Martinez relied on the reports of the Internal Affairs Division and Warden Zenk and referred the matter for hearing regarding termination of the Plaintiff's employment; pursuant to statute, written charges were prepared and submitted to the Lake County Corrections Merit Board. *Id.* Nos. 3, 5; Def. Ex. H, pp. 1–3, ECF No. 40-8. The parties agree that pursuant to Indiana Statute and Lake County Ordinance, the Plaintiff was entitled to, and received, an evidentiary hearing before the Board, at which she was represented by an attorney. *See* Def. Exs. I, J (Lake County Code Sections), ECF Nos. 40-9, 40-10; Def. App'x Hicks, 66:8–69:20. The parties also agree that, pursuant to Indiana Statute and Lake County Ordinance, the Lake County Sheriff cannot terminate a correctional officer independently and that termination of a correctional officer must be carried out by the Board. Following the hearing, the Plaintiff's employment was terminated in May 2021 by a unanimous vote of the Board, and a written decision was issued. Def. Ex. H. pp. 4–9.

In 2020, during the COVID-19 pandemic, Lake County implemented the Families First Coronavirus Response Act, which allowed up to two weeks of paid sick leave for an employee unable to work because the employee is quarantined or experiencing COVID-19 symptoms and seeking a medical diagnosis. *See* Pl. Ex. 2, 21:1–14; https://www.dol.gov/agencies/whd/ pandemic/ffcra-employee-paid-leave (last visited Oct. 8, 2024). In July 2020, two Caucasian

male correctional officers, Justin Zandy and Joshua Brooks, violated this leave policy by going out to eat while they should have been home in quarantine. Pl. Ex. 1, 73:16–19, 74:1–9; Pl. Ex. 2, 22:23–25, 23:15–24:6. This was brought to Warden Zenk's attention. Pl. Ex. 2, 24:7–12. Zandy and Brooks received an official reprimand. *Id.* 24:13–21. Warden Zenk testified that the primary issue was their failure to follow CDC guidelines and quarantine procedures that the Defendant wanted its staff to follow, which was serious. Def. Suppl. Ex., 24:15–26:3. He clarified that it was legitimate that they were off work based on the policy and procedure and "there was nothing that indicated they made up being exposed to COVID." *Id.* 25:6–11. Their employment was not terminated. *Id.* 26:13–17.

## ANALYSIS

The Defendant moves for summary judgment on all counts of the Complaint.

**A.    Title VII Race and Sex Discrimination (Count III)**

In Count III, the Plaintiff alleges claims of race and sex discrimination under Title VII when her employment was terminated for violating the Defendant's FMLA policy. The Court begins with this claim because the Plaintiff relies on her Title VII pretext argument in support of several ADA claims.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1). As the Seventh Circuit stated in *Ortiz v. Werner Enterprises*, the court asks whether the evidence, considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's race . . . [or] sex . . . . caused the discharge." 834 F.3d 760, 765 (7th Cir. 2016). "In adjudicating a summary judgment motion, the question remains: has the non-moving party produced sufficient evidence to support

a jury verdict of intentional discrimination?" *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Here, the Plaintiff is proceeding under the *McDonnell Douglas* burden-shifting method, which requires that she "make a prima facie case of discrimination, at which point the burden shifts to the employer to offer a nondiscriminatory motive, and, if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext." *Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018)).

First, the prima facie case of discrimination requires a showing that (1) the plaintiff belongs to a protected class, (2) she met the employer's legitimate expectations, (3) she suffered an adverse employment action; and (4) another similarly situated employee outside of her protected class received better treatment from the employer. *Marshall v. Ind. Dep't of Corr.*, 973 F.3d 789, 791–92 (7th Cir. 2020). On the first and third elements, it is undisputed that the Plaintiff is an African American female and that her employment was terminated in May 2021 by the Board after Warden Zenk referred her for an internal affairs investigation in late November or early December 2020 when he believed she had misused FMLA leave.

The second element, however, is disputed. The Plaintiff contends that she was meeting the Defendant's legitimate expectations because in mid-November 2020, her direct supervisor gave her performance evaluation ratings of "meets expectations." But the Defendant argues she was no longer meeting legitimate expectations at the time of her termination in May 2021 because in late November or early December 2020, Warden Zenk referred the Plaintiff to the Sheriff for an internal investigation and disciplinary proceedings based on the misconduct related to the use of FMLA leave for vacation in November 2020, which ultimately led to her

termination by the Board. The Plaintiff contends she nevertheless has raised an inference that the Defendant applied its legitimate expectations regarding FMLA violations in a disparate manner because two Caucasian male correctional officers who violated a different FMLA policy in July 2020 received only a reprimand.

The Seventh Circuit Court of Appeals has held that, when disparate treatment is alleged, the second and fourth prongs of the prima facie case merge if a plaintiff can offer evidence to support an inference that the legitimate expectations were applied in a disparate manner, allowing the plaintiff to proceed to the pretext inquiry. *See Peele v. Country Mut. Ins.*, 288 F.3d 319, 329 (7th Cir. 2002) (citing cases); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 394 (7th Cir. 2010) (citation omitted). But here, the Plaintiff fails to raise such an inference because the two Caucasian male correctional officers are not similarly situated comparators. To be similarly situated, it must be shown that the comparators "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or their employer's treatment of them." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) (citations omitted).

In July 2020, correctional officers Justin Zandy and Joshua Brooks, both Caucasian males, were granted paid leave to stay home in quarantine under the Families First Coronavirus Response Act, which amended the FMLA. *See Zarling v. Village of Winneconne*, No. 21-C-1013, 2022 WL 3553476, at *1 (E.D. Wis. Aug. 18, 2022) ("In general, the FFCRA obligated employers to offer sick leave and emergency family leave to employees who were unable to work because of the pandemic."). However, both officers went out to eat while they should have been in quarantine. The quarantine violation was brought to Warden Zenk's attention, and the officers received an official reprimand.

In contrast, the Plaintiff, an African American female, used previously approved intermittent FMLA leave to take a vacation with friends, which she has consistently admitted both in the disciplinary proceedings and her deposition testimony in this case.[1] When she planned the vacation and requested time off, the Plaintiff was initially advised by her supervisor that she did not have available vacation time to use for the trip; as a result, the Plaintiff requested FMLA leave instead. Subsequently, Warden Zenk learned that the vacation had been taken with FMLA leave. He discussed this matter with Danielle Royster, Human Resources Director for Lake County Government, who is an African American female. He relied on her advice that termination of the Plaintiff's employment was appropriate under the circumstances and referred the matter to the Lake County Sheriff for consideration of further discipline and termination. The Plaintiff was then brought before the Lake County Corrections Merit Board on charges of misconduct. The Plaintiff, represented by counsel, was afforded a hearing before the Board, which voted that the Plaintiff had violated Defendant's policies sufficient to warrant termination.

Officers Zandy and Brooks are not similarly situated comparators because they had not "'engaged in similar conduct' of comparable seriousness." *Coleman v. Donahue*, 667 F.3d 835, 852 (7th Cir. 2012) (quoting *Gates*, 513 F.3d at 690); *see de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 559 (7th Cir. 2019) (citation omitted). First, Zandy and Brooks were on leave to quarantine under the emergency FMLA provisions during the COVID-19 pandemic, whereas the Plaintiff took her vacation using her intermittent FMLA leave that had been approved for her serious health condition of type II diabetes. Second, Zandy and Brooks violated the quarantine

---

[1] While the Plaintiff contends that she did not violate the FMLA policy because she took the vacation for her mental health, as recommended by her doctor, this belief was based on her own personal understanding of FMLA leave and not based on any information she received from the Defendant. The question on this Title VII discrimination claim is whether the Defendant's decision to terminate her employment was a pretext for race or sex discrimination, and the Plaintiff has not offered evidence to question that Warden Zenk, the Sheriff, or the Board believed she had violated the FMLA policy at issue.

requirements of their COVID-19-related FMLA leave, but Warden Zenk confirmed that there were no allegations that they misrepresented their entitlement to the leave. In contrast, the Plaintiff's use of her intermittent FMLA leave for a vacation with friends when she did not have regular vacation time was a violation of the Defendant's FMLA policies. While Warden Zenk viewed the quarantine violation by Zandy and Brooks as serious in that it violated the health-related CDC guidelines and quarantine procedures, Warden Zenk viewed the Plaintiff as having violated the terms of eligibility under the Defendant's established FMLA leave policy, which was grounds for termination. The Plaintiff has not offered any evidence that these were not Warden Zenk's honest beliefs. Because Zandy and Brooks were not similarly situated comparators, the Plaintiff cannot establish a prima facie case of discrimination and summary judgment for the Defendant on the Title VII discrimination claim is proper.

Even if she had established a prima facie case, the Plaintiff must show that the Defendant's articulated legitimate reason for her termination—that she was found by the Board to have violated the Defendant's FMLA policy when she used FMLA leave for a vacation—was a pretext for discrimination. A plaintiff can demonstrate pretext by showing that the defendant's proffered reason (1) had no basis in fact, (2) did not actually motivate her termination, or (3) was insufficient to motivate her termination. *Worth v. Tyer*, 276 F.3d 249, 266 (7th Cir. 2001) (citation omitted).

The Plaintiff's only pretext argument is that officers Zandy and Brooks were similarly situated Caucasian males who were treated more favorably when they violated an FMLA policy but received only a reprimand. Indeed, "[a] showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, nondiscriminatory reason for the adverse employment action

was a pretext for racial discrimination." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 892 (7th Cir. 2001) (citations omitted); *see Curry v. Menard*, 270 F.3d 473, 479 (7th Cir. 2001) (finding sufficient evidence of pretext where similar discipline was not enforced against similarly situated non-black employees). For the reasons set forth above, Zandy and Brooks were not similarly situated comparators, and thus the Defendant's treatment of their leave violations cannot serve as a basis for demonstrating pretext. Again, the Plaintiff has offered no evidence to suggest that Warden Zenk did not honestly believe the Plaintiff violated the Defendant's FMLA policy when he referred her to the Sheriff for disciplinary investigation.

Because the Plaintiff has failed to offer evidence to raise an inference of discriminatory intent, the Court grants summary judgment for the Defendant on the Plaintiff's Title VII race and sex discrimination claims in Count III.

**B.    ADA Discrimination and Harassment (Count I)**

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Count I asserts both an ADA discrimination claim and an ADA harassment claim, which the Court considers in turn.

*1.    ADA Discrimination*

To succeed on a disability discrimination claim, a plaintiff must prove "that: (1) the plaintiff was disabled; (2) the plaintiff was otherwise qualified to perform essential functions with or without reasonable accommodation; and (3) disability was the 'but for' cause of the adverse employment action." *Castetter v. Dolgencorp, LLC*, 953 F.3d 994, 996 (7th Cir. 2020) (citing *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019)). The question on summary

15

judgment is whether the evidence, when considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's [disability] caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. As with the Title VII claim, a plaintiff may also resist summary judgment under the familiar *McDonnell Douglas* burden shifting framework. *See Brooks v. Avancez*, 39 F.4th 424, 433–34 (7th Cir. 2022).[2] The Plaintiff appears to proceed under both methods.

When considering the evidence as a whole, the parties do not dispute, for purposes of this motion, that the Plaintiff was disabled because of her type II diabetes. And the Defendant does not address whether the Plaintiff was "otherwise qualified."[3] Rather, the Defendant moves for summary judgment on the but-for causation element, which is where the claim fails. Circumstantial evidence of causation may include "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically received better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017) (quoting *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 684 (7th Cir. 2014)).

---

[2] Under the *McDonnell Douglas* framework, a plaintiff bringing an ADA discrimination claim must first "make a prima facie case of discrimination by demonstrating that (1) she is disabled under the ADA . . . ; (2) she performed her job to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) one or more similarly situated individuals outside her protected class received better treatment. *Brooks*, 39 F.4th at 434 (citations omitted). The defendant then "must produce evidence demonstrating that it took the actions [plaintiff] complains of based on legitimate, nondiscriminatory reasons." *Id.* "If successful, it falls to [the plaintiff] to demonstrate that [the defendant's] reason is pretextual—that is, an attempt to mask a discriminatory reason with a legitimate excuse." *Id.*

[3] Separately in the context of the Count II ADA failure to accommodate claim, the Defendant discusses case law addressing whether the ability to work overtime is an essential job function. Yet the Defendant does not move for summary judgment on the "otherwise qualified" element of either the ADA failure to accommodate claim or the instant ADA discrimination claim.

In her response brief, the Plaintiff identifies the termination of her employment as the relevant adverse employment action for this ADA discrimination claim. *See* Pl. Resp. 9, ECF No. 43.[4] However, the only evidence cited by the Plaintiff to link her disability to her termination is her March 24, 2020 conversation with Deputy Warden Cox, noting that Cox gave unsolicited advice about her diabetes by suggesting she lose weight like Cox's husband and that Cox warned she may be terminated if she could not do her job because of her disability. "[I]solated comments must be contemporaneous with termination or causally relate to the termination process in order to be probative of discrimination." *Castetter*, 953 F.3d at 997 (citation omitted). First, the conversation, which took place approximately eight months prior to the late-November or early-December 2020 internal investigation for misuse of FMLA leave that ultimately led to her termination, is too far removed in time to be probative of discrimination. More importantly, there is no evidence that Deputy Warden Cox was involved in either the investigation initiated by Warden Zenk and conducted by the Sheriff or the Board proceedings that lead to the Plaintiff's termination, other than to provide documents when requested.

The Plaintiff also argues pretext, making the conclusory assertion that she "has established that [the Defendant's] reason for its adverse action is a pretext for disability discrimination." Pl. Resp. 9. This appears to be a reference to the pretext argument previously made on her Title VII race and sex discrimination claims that two Caucasian male correctional officers were treated more favorably after violating an FLMA leave policy. Even assuming that the officers were not disabled (which she does not address) and thus were outside her protected

---

[4] In its motion, the Defendant had identified the adverse employment actions as the discipline imposed when the Plaintiff allegedly failed to take an officer's temperature and when she violated the chain of command. The Plaintiff did not address either form of discipline in her response brief and thus has abandoned them as a basis for this claim. *See Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003) (concluding that a claim was abandoned when a party failed to defend it "in his district court brief in opposition to summary judgment").

class for purposes of this disability discrimination claim, the Court has already held that the two officers were not similarly situated. As a result, they cannot serve as comparators either for the prima facie case and the pretext showing under the *McDonnell Douglas* framework or as evidence of pretext when considering the evidence as a whole. The Plaintiff offers no evidence to connect her disability to Warden Zenk's decision to refer her for discipline in December 2020 based on his belief that she had misused her FMLA leave or to the Board's vote for termination in May 2021. Again, she offers no evidence to draw into question the honesty of the decisionmakers' belief that she had violated the FMLA policy. The Plaintiff cannot show pretext.

Accordingly, the Plaintiff has failed to offer evidence to create a genuine dispute of fact that her disability was the but-for cause of her termination. The Court grants summary judgment for the Defendant on the claim of disability discrimination under the ADA in Count I.

*2.    ADA Harassment/Hostile Work Environment*

In Count I, the Plaintiff also alleges that she was harassed because of her disability in violation of the ADA. A hostile work environment, which is actionable under the ADA, "exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 851, 852 (7th Cir. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To survive summary judgment on a claim of harassment or hostile work environment, a plaintiff must offer evidence that (1) she was subject to unwelcome harassment; (2) the harassment was based on her disability; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Id.* at 856 (quoting *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 900 (7th

Cir. 2018)). To determine whether the work environment is hostile, the Court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hambrick v. Kijakazi*, 79 F.4th 835, 842–43 (7th Cir. 2023) (quoting *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014)).

The Defendant argues that the Plaintiff cannot establish that the harassment was sufficiently severe or pervasive as to alter the conditions of her employment. In response, the Plaintiff points again only to the March 24, 2020 conversation with Deputy Warden Cox as the basis for this claim. She asserts that she was harassed and demeaned by Cox during the meeting, which had been scheduled to address her request for a reasonable accommodation of not being required to work overtime. The Plaintiff argues that Cox, who was her supervisor, improperly discussed the Plaintiff's disability in front of Cox's sister—JaVonta Kelly, who worked at the Lake County Jail and was in Cox's office at the time but may not have been authorized to access employee personnel and medical records. The Plaintiff contends that the conversation was demeaning because it was in front of Cox's sister and because Cox told the Plaintiff that she should be able to control her diabetes with weight loss since Cox's husband had been able to. In addition, Cox commented that the Plaintiff was too short for her weight and that she risked termination if she could not work because of her disability.

Although uncomfortable and demeaning for the Plaintiff and likely inappropriate in the presence of Cox's sister, the conversation by itself was not sufficiently severe or pervasive to sustain the Plaintiff's hostile work environment claim. There is no indication that Cox and her sister were antagonistic or unfriendly about their comments. Even so, "having supervisors who are short tempered, hostile, unfairly critical, and disrespectful, does not amount to objectively

19

offensive, severe, or pervasive conduct." *Id.* at 843 (cleaned up) (quoting *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018)). Moreover, this alleged harassment took place on only one occasion and was not sufficiently severe to alter the terms and conditions of her employment. *See Ford*, 942 F.3d at 851 ("A hostile work environment 'occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.'" (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002))); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (citation omitted)). The Plaintiff offers no response to the Defendant's argument that this single conversation was neither severe nor pervasive and has identified no other incidents as the basis of this harassment claim.

Accordingly, the Court grants summary judgment for the Defendant on the Plaintiff's ADA harassment/hostile work environment claim in Count I.

## C.    ADA Failure to Accommodate (Count II)

In Count II, the Plaintiff alleges that the Defendant failed to honor her reasonable accommodation, or in the alternative, denied the Plaintiff a reasonable accommodation. Under the ADA, an employer must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). A plaintiff bringing a failure to accommodate claim must show that (1) she was a qualified individual with a disability, (2) the employer was aware of her disability, and (3) the employer failed to reasonably

accommodate her disability. *Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 503 (7th Cir. 2020) (quoting *Sansone v. Brennan*, 917 F.3d 975, 979 (7th Cir. 2019)).

The parties do not dispute that the Plaintiff has a disability—type II diabetes—or that the Defendant was aware of the disability. And the Defendant does not move for summary judgment on whether the Plaintiff was a "qualified individual."[5] Rather, the only issue is whether the Plaintiff has offered evidence that the Defendant failed to reasonably accommodate her disability when she asked not to work in the Booking area of the Lake County Jail during the COVID-19 pandemic.[6] Although there is no record of a formal request for this accommodation, on May 26, 2020, the Plaintiff told her supervisor, Lieutenant Kimmel, that she could not work in Booking because of anxiety resulting from the potential of contracting COVID-19 because of her type II diabetes, and Kimmel approved the request.[7] The evidence of record shows that the Defendant accommodated the request on all but one occasion.

The day after the May 26, 2020 request, the Plaintiff was assigned to Booking but was given an alternative accommodation by being provided the same personal protective equipment worn by the medical staff. In doing so, the Defendant was following EEOC COVID-19 guidance. *See* What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and other EEO Laws § D, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-

---

[5] Although the Defendant offers case law on the essential job functions of a correctional officer, the Defendant does not move for summary judgment on the element. *See* Def. Br. 13, ECF No. 39.

[6] The Plaintiff's written Request for Reasonable Accommodation asked to not be required to work overtime, but her response brief explicitly states that she is not pursuing that accommodation as the basis of the claim. Pl. Resp. 11. Thus, any such claim is abandoned. *See Palmer*, 327 F.3d at 597.

[7] The Seventh Circuit has consistently held that "disabled employees must make their employers aware of any nonobvious, medically necessary accommodations with corroborating evidence such as a doctor's note or at least orally relaying a statement from a doctor, before an employer may be required under the ADA's reasonableness standard to provide a specific modest accommodation." *See Wells v. Winnebago County*, 820 F.3d 864, 867 (7th Cir. 2016) (quoting *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009)). For purposes of this motion, the Defendant does not contest that the Plaintiff notified it of this accommodation.

and-ada-rehabilitation-act-and-other-eeo-laws (last visited Oct. 8, 2024). The Plaintiff does not

contend that the personal protective equipment was an unsatisfactory alternative under the

circumstances. *See E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005)

(explaining that "an employer is not required to provide the particular accommodation that an

employee requests" but must "provide an accommodation that effectively accommodates the

disabled employee's limitations").

It was not until August 2020 that the Plaintiff was again assigned to Booking and

Sergeant Machnikowski told her that he was not allowed to accommodate her. An employer

must "reasonably accommodate the known physical or mental limitations of an otherwise

qualified individual with a disability, unless the accommodation would impose an undue

hardship on the employer." *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 525 (7th Cir. 1996)

(citing 42 U.S.C. § 12112(b)(5)(A)). There appears to be a question of fact about why the

accommodation could not be provided, possibly because of staffing issues. Nevertheless, the

question is not material because a "[r]easonable accommodation under the ADA is a process, not

a one-off event." *Scheidler*, 914 F.3d at 542 (citation omitted) (rejecting a claim when the

employer breached the arrangement one time but otherwise honored the requested reasonable

accommodations). On this record, the one occasion on which the Defendant failed to provide the

reasonable accommodation of not working in Booking is insufficient to support a failure to

accommodate claim.

Accordingly, the Court grants summary judgment for the Defendant on the Plaintiff's

ADA failure to accommodate claim in Count II.

**D.    Retaliation for Engaging in Protected Activity (Count IV)**

In Count IV, the Plaintiff alleges that the Defendant retaliated against her for engaging in protected activity. It is unlawful for an employer to retaliate against an employee who asserts her rights under the ADA. 42 U.S.C. § 12203(a). To prove an ADA retaliation claim, a plaintiff must show (1) she engaged in statutorily protected activity, (2) she suffered an adverse action, and (3) there is a causal connection between the two. *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 243 (7th Cir. 2018) (citing *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814 (7th Cir. 2015)). Protected activities under the ADA include seeking an accommodation or asserting a claim of discrimination due to disability. *Id.* (citing *Preddie*, 799 F.3d at 814–15). As with the ADA discrimination claim, the causation element requires a plaintiff to show but-for causation, meaning that the defendant would not have taken the adverse action if the plaintiff had not engaged in the protected activity. *Rowlands v. United Parcel Serv.–Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018).

In her response brief, the Plaintiff identifies the protected activity as her September 30, 2020 EEOC charge, noting that she had previously complained to Warden Zenk about alleged mistreatment by Deputy Warden Cox based on her disability. And the adverse employment action is the late-November or early-December 2020 referral by Warden Zenk for an internal affairs investigation into the Plaintiff's use of FMLA leave for a vacation with friends when she had no regular vacation time to use, which led to the Board terminating the Plaintiff's employment in May 2021. Summary judgment for the Defendant is proper because the Plaintiff cannot show a causal connection between her EEOC charge and her discipline and termination.

As argued by the Plaintiff, a causal connection can be shown by circumstantial evidence of retaliation, which includes "(1) suspicious timing; (2) ambiguous statements or behavior

towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive[d] better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* at 802 (quoting *Monroe*, 871 F.3d at 503).[8] First, the Plaintiff again argues that she has established pretext by showing that officers Zandy and Brooks, who were outside of her protected classes were treated more favorably. However, as set forth in the analysis of the Plaintiff's Title VII claim, Zandy and Brooks are not similarly situated comparators. Thus, the Defendant's treatment of their violations cannot serve as a basis for showing pretext.

Second, the Plaintiff contends that she can prove "an inference of retaliatory intent because she made complaints about Cox, and Cox harassed, embarrassed, and threatened her job, with respect to Hick's disability." Pl. Resp. 12. But the evidence of record is that Deputy Warden Cox harassed and embarrassed the Plaintiff during the March 24, 2020 conversation *before* the Plaintiff complained about Deputy Warden Cox. And more importantly, the Plaintiff has offered no evidence connecting Deputy Warden Cox to the decision to terminate the Plaintiff's employment, other than Deputy Warden Cox providing documentation when requested. The evidence is that Deputy Warden Cox made no recommendation regarding the Plaintiff's discipline or termination. Warden Zenk, who made the recommendation for the discipline that ultimately led to the termination of the Plaintiff's employment, did not make any comments

---

[8] Although the Plaintiff does not argue suspicious timing based on the six to eight weeks between her EEOC charge and the investigation, the Court notes that "[s]uspicious timing alone rarely establishes causation." *Sklyarsky v. Means-Knaus Partners*, 777 F.3d 892, 898 (7th Cir. 2015). This is especially true when "a significant intervening event" separate[s] [the employee's protected activity] from [her] discharge." *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011) (citation omitted). Here, the allegations of the Plaintiff's misuse of her FMLA for vacation is such a significant intervening event, which immediately preceded the investigation.

regarding her disability. And there is no evidence that Warden Zenk based his recommendation for the investigation and termination on anything other than the recommendation of Human Resources Director Royster and his belief that the Plaintiff violated the Defendant's FMLA policy.

Accordingly, the Court grants summary judgment for the Defendant on the retaliation claim in Count IV.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS the Defendant's Motion for Summary Judgment [ECF No. 38]. The Court DIRECTS the Clerk of Court to enter judgment for the Defendant Lake County Sheriff Department and against the Plaintiff Ebony Hicks. The Plaintiff takes nothing by her complaint.

SO ORDERED on October 8, 2024.

 s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT